## WILLIAM H. NICHOLS *vs.* HENRY M. ROGERS.

Suffolk.   Jan. 26. — March 25, 1885.   DEVENS, W. ALLEN, & COLBURN, JJ., absent.

An obligee of a bond to convey a mine in a distant Territory, who had agreed to sell certain interests in it, became insolvent, and notified the intended purchasers of the fact, and they entered into an agreement by which one of their number was to have the "sole, absolute, and untrammelled control" of the interests, and was authorized to distribute them from time to time, as he might deem best, provided that he reserved to the parties "some interest in the mine." The trustee agreed to use his best skill and judgment to bring to a successful result the recovery of the mine, or the money of the parties. Money was advanced to the trustee, and he purchased undivided parts of the mine, and made sales of parts. Within three months from the date of the agreement, one of the parties thereto requested the trustee to convey to him his interest, and to render an account. The trustee refused. *Held,* that a bill in equity, brought within six months from the date of the agreement could not be maintained.

A bill in equity which is insufficient in itself is not aided by an amendment which states facts which may or may not be subsequent in time to the filing of the bill.

A general allegation of fraud in a bill in equity is insufficient.

A bill in equity alleged that the defendant, with funds contributed by the plaintiff, bought a portion of a mine, and now denies that the plaintiff has any interest

in such portion, and claims to hold it to his own use. *Held,* that this was an insufficient averment of a refusal to recognize the rights to which the plaintiff would be entitled when the subject of the trust was closed.

BILL IN EQUITY, filed May 16, 1883, alleging that, on December 26, 1881, the owners of a certain mine in Arizona executed a bond to one Dowley to convey the mine to him, on or before March 1, 1882, for $50,000; that on January 18, 1882, Dowley assigned the bond to William H. Nichols, the time of payment of the purchase money being extended to January 1, 1883; that on March 13, 1882, William H. Nichols agreed to sell one fifth of said mine and of said bond to the plaintiff, one fifth to the defendant, one fifth to one Saunders, and two fifths to other persons, the plaintiff making payment on account of his interest; that in November, 1882, William H. Nichols became insolvent, and notified the plaintiff and the other purchasers that he could not pay the obligors in the bond the balance of the purchase money, and that they might negotiate directly with the obligors; that thereupon, on November 20, 1882, the plaintiff, the defendant, and Saunders executed an instrument, under seal, wherein they covenanted and agreed to and with each other as follows:

" 1. To entrust to Henry M. Rogers the sole, absolute, and untrammelled control of our respective interests, authorizing him to distribute them as he from time to time may deem best, provided only that he reserves to us, respectively, some interest in the mine, or in the stock of the mine provided the mine be put into a stock company.

" 2. The several sums of money paid or to be paid by us, respectively, to said Rogers, are to be used by him in such manner as his best judgment may approve. That such sums of money are not loaned to him or received by him for any purpose but to try to save to us, respectively, some portion of the money or of the mine to which we are respectively entitled under our respective agreements with William H. Nichols. Should such sums of money as have been or are to be paid to said Rogers be lost by him, he is in no event to be held personally responsible therefor.

" 3. The said Rogers shall be entitled to receive from the shares of mine or money obtained by him a reasonable compensation for his time and services.

" 4. The said Rogers, in consideration of the premises, agrees with the parties hereto, and with each of them, to use his best energy, skill, and judgment to bring to a successful result the recovery of the mine or the money of the parties hereto, and obtain for them substantial and positive benefits from his labors in the premises."

The bill further alleged, that the plaintiff and Saunders advanced money to the defendant, and that the defendant, on December 5, 1882, obtained a conveyance of two fifths of the mine, and on December 8, 1882, agreed to sell to one Miller one tenth of the mine, and on December 25, 1882, obtained a conveyance of two fifths of the mine; that the defendant now holds four fifths of the mine, less the one tenth sold to Miller, to wit, seven tenths of the mine, and all the personal property in trust for the benefit of the plaintiff, Saunders, and the defendant, who have each contributed one third of the purchase money; that on February 15, 1883, the plaintiff requested the defendant to convey to him his interest and render an account.

The prayer of the bill was that the defendant execute to the plaintiff a conveyance of seven thirtieths of the mine, and of one third of the personal property and all rights acquired under the bond and agreement.

On January 24, 1884, the bill was amended by alleging that the parties to the agreement did not intend, at the time of the making thereof, or afterwards, that the defendant had a right thereunder to hold said property for the purpose of working the mine, or of organizing a company thereunder; that neither of them had pretended that the defendant had such right, or to do anything further under the agreement; but that it was understood and conceded by all parties in interest that each party was entitled to receive a conveyance of his share as soon as the account of the defendant was settled.

The amended bill further alleged that the defendant bought of one Warren one tenth of the mine, and gave him therefor the sum of $1300, and also a tenth of the same mine, which last-named tenth the defendant bought of one Chilson, and paid for with funds contributed by the plaintiff, Saunders, and the defendant; that the defendant now denies that the plaintiff has any interest in the tenth purchased of Warren, and claims to

hold it to his own use; and that the defendant had not in this transaction acted in good faith, but had acted fraudulently and in bad faith.

The defendant demurred to the bill as amended, for want of equity.

The case was heard on the bill and demurrer, by *Holmes*, J., who ordered a decree to be entered sustaining the demurrer and dismissing the bill. The plaintiff appealed to the full court.

*A. E. Pillsbury*, for the plaintiff.

*R. M. Morse, Jr.*, for the defendant.

C. ALLEN, J. The bill in this case was filed in less than six months after the date of the agreement. It may be assumed, since it is not disputed, that under the agreement the defendant became a trustee, and that he is, or at a proper time will be, accountable as such. But the agreement vested in him large powers and a wide discretion, and fixed no time within which the trust should be executed. The service which the defendant assumed might well require considerable time for its successful performance. The bill as originally drawn contains no averment that a reasonable time has elapsed, or that the defendant has completed his service or abandoned his efforts under the agreement, or that he has in any respect acted in bad faith; but it alleges that, at a date which was within three months after the agreement was entered into, the plaintiff requested the defendant to make to him a conveyance of one third interest in the property. This demand was not in conformity to the agreement, but was in contravention of it. The plaintiff was not entitled as of right to the share which he asked for. There was no resulting trust, as under the agreement the plaintiff was not entitled to any certain specific share. *McGowan* v. *McGowan*, 14 Gray, 119. We cannot see that a reasonable time had elapsed at the time of filing the bill. *Seamans* v. *Gibbs*, 132 Mass. 239. It follows, that the bill does not on its face show any ground for equitable relief existing at its date.

By amendment, the plaintiff has added two further averments. The first is an attempt to negative the authority of the trustee to form a corporation to hold and manage the property. Without now considering whether the written agreement does not import such authority, let it be assumed as alleged; and the

grounds of objection to the original bill are not removed. The second, at first sight, looks like a charge of maladministration. But it is plain that the language ought to be construed with considerable strictness ; and the plaintiff's counsel only contends that this is an averment of that which equity regards as a fraud, and that the charge of fraud is intended merely to characterize the legal or equitable result of the facts set forth. It is not easy to accept the charge as meaning what it says, since it seems absurd on its face to suppose that the defendant would give $1300 in money and one tenth of the mine in exchange for another one tenth of the mine. Still, the charge unquestionably presents a matter which would be suitable for investigation on a final accounting. The difficulty at present is, that it is not averred that the defendant did the acts prior to the filing of the bill. The amendment is dated eight months after the bill ; and since, by our practice, under the 25th Chancery Rule, matters formerly considered as suitable for a supplemental bill may be charged by way of amendment to the original bill, these matters so charged may, for all we know to the contrary, have been of subsequent occurrence. If so, they alone would not support the bill. *Pinch* v. *Anthony*, 10 Allen, 470. *Evans* v. *Bagshaw*, L. R. 8 Eq. 469; L. R. 5 Ch. 340. *Tonkin* v. *Lethbridge*, G. Coop. 43. *Milner* v. *Milner*, 2 Edw. Ch. 114. Besides, there is a generality in the averment which is not consistent with the certainty required when fraud is charged. *Wallingford* v. *Mutual Society*, 5 App. Cas. 685, 697. There is no suggestion that, in any account rendered or in any formal statement made, the defendant has refused to recognize all the rights to which the plaintiff will be entitled when the whole matter is closed up. The averment that the defendant now denies that the plaintiff has any interest in a specific tenth part of the mine, and claims to hold the same to his own use, does not show such refusal clearly, or by fair implication.          *Bill dismissed.*