OPINION OF THE COURT
Lorraine S. Miller, J.
The plaintiff Commissioners of the State Insurance Fund (Fund) have moved to strike the first affirmative defense of defendant Liverpool Central School District No. 1 (Liverpool), *502 which asserts a failure by the Fund to comply with Education Law § 3813 (1). In the alternative, the Fund seeks permission, pursuant to Education Law § 3813 (2-a), to file a late notice of claim,* seeking insurance premiums in the amount of $237,211.51 which, by its complaint, are alleged to have become “due and owing to The State Insurance Fund on July 1, 1994.” In sole support of its motion, the Fund exhibits (1) a June 6, 1998 letter from Liverpool’s accountants stating its receipt that day of “retrospective premium adjustments from the Actuarial Department”, and asking for patience while the accountants review it; and (2) an August 6, 1998 letter, faxed from the Fund to the accountants and requesting a waiver from Liverpool of the Statute of Limitations “if [Liverpool] would prefer to delay legal proceedings”. Noticeably absent is the complaint and answer.
Liverpool cross-moves to dismiss the complaint for failure to comply with Education Law § 3813 (1) or, in the alternative, to transfer this action to Onondaga County pursuant to CPLR 504 (2), which provides, in pertinent part, that actions against a school district must be brought in the county where the school district is situated. Liverpool provides the summons and complaint and its answer as exhibits.
Education Law § 3813 (1) requires that a notice of claim be served upon a school district “within three months after the accrual of such claim”. Education Law § 3813 (2-a) permits a court to extend this time period up to one year, giving consideration to “whether the district or school or its attorney * * * or other agent acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one of this section or within a reasonable time thereafter.” The statute goes on to direct consideration of “whether the delay in serving the notice of claim substantially prejudiced the district or school in maintaining its defense” (Education Law § 3813 [2-a]).
As Liverpool points out, if, as the complaint states, the amount sought became “due and owing” on July 1, 1994, in the absence of a notice of claim filed no later than three months after that date, by virtue of Education Law § 3813 (2-a) this court now lacks discretion to grant permission to file a late notice and this action must be dismissed. (Parochial Bus Sys. v Board of Educ., 60 NY2d 539 [1983].)
*503 The Fund responds by avering that the complaint was computer-generated and in error: since Liverpool had a “retrospective policy” such that, even though Liverpool canceled its policy with the Fund on July 1, 1994, the “premiums continue to accrue, through adjustments, until all claims for the insured periods are closed or the maximum risk contracted for has been reached. Periods 7/1/91-7/1/92, 7/1/92-7/1/93, and 7/1/93-7/1/94 are still active and premium [s] will continue to accrue. In a retrospective policy the premium due is unascertainable until all claims are paid. As such, the premiums become due and owing when billed, not when the policy is canceled.” Hence, up to January 22, 1998 Liverpool had no outstanding balance due but, on that date the Fund presented a bill for $53,959 for the 1991-1992 period; $4,423 for the 1992-1993 period; and $98,915 for the 1993-1994 period. Then, on June 2, 1998, the Fund billed for an additional $37,626.51 for the 1991-1992 period; $11,341 for the 1992-1993 period; and $30,947 for the 1993-1994 period. The total of all these is the amount sued for, or $237,211.51.
In support of this, counsel exhibits what appears to be a computer-generated statement, dated February 25, 1999, of the billing history. The document is hardly the epitome of clarity; for instance, certain amounts appear to be credits, totaling some $79,138.23, and these are not explained, nor is a “refund” amount of $33,104.23. In addition, the Fund provides another letter from Liverpool’s accountants, dated March 12, 1998, which disputes the “adjustments” for several reasons and requests “the loss runs that were used to calculate these adjustments”, warning that the Fund’s “[fjailure to provide complete, thorough, and logical responses to these questions will prolong this process.” Notably absent is the policy of insurance itself. Nor is there any evidence that the accountants are “other agents” or that the Fund’s bills were “verified claims” within the meaning of Education Law § 3813 (2-a). (See, Parochial Bus Sys. v Board of Educ., 60 NY2d 539, 546-548 [1983], supra [where the Court held that a cover letter with invoices enclosed, sent to the Director of the Board’s Bureau of Pupil Transportation, did not constitute a sufficient “notice of claim” under this statute].)
Commendably, the Fund concedes that it did not give a satisfactory notice of claim but argues that, since the bill only matured as of January 22, 1998, and its motion for permission to file a late notice was filed within a year of this accrual date, the court should, under the teaching of Giblin v Nassau County *504 Med. Ctr. (61 NY2d 67 [1984]), grant its application. Giblin held that the filing of a motion within the one-year period stayed the time within which to file a notice of claim.
In addition, in its reply papers, the Fund also makes a second request for permission to amend its complaint, this time to correct the “computer-generated” error regarding the date when the premiums became due and owing, now only to seek interest from the date the bills were presented. Again, however, the Fund fails to supply a copy of its proposed amended complaint.
Even if there were no unfairness in considering a request made for the first time in reply papers (which could have easily been included in its original motion to file a late notice of claim), the Fund’s repeated failure to adduce proper proof of the allegations in its attorney’s affirmation and its untimeliness in making its request are troubling. In Clark v Foley (240 AD2d 458, 458-459 [2d Dept 1997]), the Appellate Division affirmed the denial of a plaintiffs motion to amend, noting that “the plaintiffs motion, supported only by an affirmation of her attorney * * * was defective. The attorney’s affirmation did not persuasively explain why the allegations of the amended complaint were not contained in the original complaint, nor did the plaintiff provide an affidavit demonstrating the merits of her proposed amendment. Therefore, the plaintiff was not entitled to be granted leave to serve an amended complaint” (citations omitted).
So here, too, has the Fund failed to adduce the necessaries for the relief it requests. It failed to provide the pleadings, although Liverpool aided the court in this regard. The Fund also failed to produce the insurance policy or contract that is the subject matter; it provides a confusing computer printout instead of an affidavit by an actuary or other knowledgeable person as to the timing and correctness of its billings; it has not explained why counsel did not examine the “computer-generated” complaint and verify its correctness before filing; and it has failed to proffer the proposed amended complaint. Accordingly, it is ordered that the Fund’s motion for permission to dismiss Liverpool’s first affirmative defense, or in the alternative, serve a late notice of claim, is denied, and it is further ordered that Liverpool’s cross motion, pursuant to CPLR 3211, to dismiss the complaint, or in the alternative, to transfer this case to Onondaga County, is granted and the complaint is dismissed, without prejudice to the Fund instituting a new action in Onondaga County, where venue is properly laid, pursuant to CPLR 504 (2). (See, Commissioners of State Ins. Fund v *505 Alexander, 4 Misc 2d 309 [Sup Ct, NY County 1956] [workmen’s compensation statute did not alter authority of former Civil Practice Act].)

 And, thereafter, to amend its complaint to allege that the verified claim was served.